No. 08-20658
United States Court of Appeals, Fifth Circuit

# Menchaca v. CNA Group Life Assurance Co.

331 F. App'x 298 (5th Cir. 2009)
Decided Aug 18, 2009

No. 08-20658 Summary Calendar.

299 August 18, 2009. *299

Michael O. Whitmire, Houston, TX, for Plaintiff-Appellant.

Lisa Kim Basinger, Wilson, Grosenheider Jacobs, Austin, TX, for Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Texas, USDC No. 4:07-CV-825.

Before KING, DENNIS, and OWEN, Circuit Judges.

---

300 *300

---

PER CURIAM:[fn*] [fn*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Vicente Menchaca appeals the district court's grant
301 of summary judgment in favor *301 of CNA Group Life Assurance Co. (CNA) and Baker Hughes, Inc. (Baker Hughes) on his claim for long-term disability benefits under ERISA and other state-law causes of action. We affirm.

# I

Menchaca worked for Baker Hughes as a machinist for over twenty years until he developed pain in his hands and wrists. Menchaca filed for benefits under Baker Hughes's Long Term Disability Plan (the Plan), which at the time was administered by ING Employee Benefits Disability Management Services (ING). The Plan contained two provisions for long-term disability benefits. The first, referred to as the "own occupation" provision, provides benefits for the first twelve months of disability for participants who are unable to engage in their regular occupation. After that initial twelve-month period, the Plan then provides coverage under the "any occupation" provision, which requires that the participant be unable to engage in "any occupation or employment for which he is qualified, or may reasonably become qualified, based on his training, education or experience." As a condition of payment of benefits, the Plan requires that "each Participant . . . provide proof of continued Total Disability. . . ." The Plan further grants the plan administrator "absolute discretion to construe and interpret any and all provisions of the Plan," as well as the authority to "[i]n its discretion, . . . determine eligibility under the terms of the Plan."

ING initially approved Menchaca's claim for benefits under the "own occupation" provision and, after the first twelve months elapsed, continued to pay benefits under the "any occupation" provision until October 2001. At that point, benefits were terminated because Menchaca failed to provide earnings-related documentation and periodic medical updates to substantiate his continued entitlement to benefits.

In July 2002, CNA replaced ING as the administrator of the Plan, but Menchaca's claim was not transferred to CNA. Instead, Baker Hughes kept the claim in-house. In response to

letters from Menchaca regarding his benefits, Baker Hughes decided to ask CNA to reopen and evaluate Menchaca's claim. Baker Hughes also directed CNA to issue a "good faith" lump-sum payment for benefits spanning from November 2001 to December 2002, but warned Menchaca that such a payment did "not constitute a determination that you, in fact, had a qualifying disabling condition during the period from November 1, 2001 through December 1, 2002 that entitled you to payment."

CNA reviewed Menchaca's file and conducted an investigation that included review of Menchaca's medical records; an interview of Menchaca in which he admitted that he was working part-time running errands and translating for an attorney; video surveillance that showed Menchaca walking, entering and exiting vehicles, and driving; an independent medical evaluation in which the doctor concluded that Menchaca had no limitations as to sitting, standing, or walking; a functional capacity evaluation that demonstrated good tolerance for sitting, walking, standing, and lifting lightweight objects; and a vocational assessment indicating that Menchaca was capable of performing alternative gainful employment. During this investigation, CNA also requested updated medical information from Menchaca showing that he was under the care of a physician and was still disabled, as required by the Plan. Menchaca refused to comply. As a result of this
302 investigation and Menchaca's *302 failure to provide updated medical information substantiating his continued disability, CNA found Menchaca ineligible for benefits and denied payment beyond December 2002. Menchaca requested reconsideration of the denial pursuant to his appeal rights under ERISA and CNA affirmed its decision.

Menchaca filed a claim in the district court for long-term disability benefits under ERISA, as well as state-law causes of action for breach of contract, statutory and common law breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, and violations of Texas Insurance Code §§ 21.21 and 21.55. CNA filed a Rule 12(b)(6) motion to dismiss the state-law causes of action, which the district court granted. Menchaca amended his complaint but continued to assert the state-law causes of action. The district court again granted a motion to dismiss the state-law claims, causing Menchaca to file a second amended complaint that again attempted to assert state-law claims. CNA then moved for summary judgment, which the district court granted.

## II

We review a district court's grant of summary judgment in ERISA cases de novo, applying the same legal standard as the district court.[1] Here, the district court reviewed CNA's denial of benefits for abuse of discretion. Menchaca argues that the district court should have applied a de novo standard of review because of a potential conflict of interest in the plan administrator's decisionmaking. Whether the district court applied the correct standard of review is a question of law that we review de novo.[2]

1 *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007).

2 *Id.*

A plan administrator's factual determinations are reviewed for abuse of discretion.[3] We also review an administrator's denial of ERISA benefits for abuse of discretion where the plan grants the administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan.[4] Evidence of a conflict of interest does not alter the abuse-of-discretion standard, but rather is "weighed as a factor in determining whether there is an abuse of discretion."[5] The plaintiff has the burden to produce evidence that a conflict exists.[6]

3 *Id.*

4 *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007).

5 *Metro. Life Ins. Co. v. Glenn*, ___U.S. ___, ___, 128 S.Ct. 2343, 2350, 171 L.Ed.2d 299 (2008) (quoting *Firestone Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)).

6 *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 270 n. 18 (5th Cir. 2004).

Here, Menchaca does not dispute that the Plan grants discretionary authority to CNA to determine eligibility for benefits and construe the terms of the Plan. Though Menchaca asserts that a conflict of interest exists in CNA's administration of the Plan, he has failed to produce any evidence that such a conflict exists or to what extent it might affect CNA's decisionmaking. Thus, the district court correctly applied an abuse of discretion standard of review.

# III

"Under the abuse of discretion standard, if the plan fiduciary's decision is supported by substantial
303 evidence and is *303 not arbitrary and capricious, it must prevail."[7] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[8] A decision is arbitrary if it is "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[9]

7 *Corry*, 499 F.3d at 397 (quoting *Ellis*, 394 F.3d at 273) (alteration and quotation marks omitted).

8 *Ellis*, 394 F.3d at 273.

9 *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996).

Menchaca argues that CNA abused its discretion by "re-open[ing][his] individual case and revers[ing] the prior decisions granting long-term disability benefits" to Menchaca. However, the evidence in the administrative record does not indicate that CNA's decision reversed the decision of the prior plan administrator. ING stopped providing benefits to Menchaca under the "any occupation" provision as of October 2001 due to Menchaca's failure to provide earnings-related documentation and medical updates. Though Baker Hughes directed CNA to issue a "good-faith" lump sum payment to Menchaca when CNA reopened Menchaca's claim, Baker Hughes specifically noted that the payment did not constitute a determination that Menchaca was eligible for benefits during this time. CNA's later denial based, in part, on Menchaca's failure to provide earnings information and medical updates is consistent with ING's prior decision.

Menchaca also argues that the district court erred in considering an opinion in the administrative record rendered by Julie Byrd, CNA's vocational case manager, whose qualifications as an expert Menchaca asserts were not established by the administrative record. Byrd stated that Menchaca had the ability to perform work as an information receptionist, surveillance camera monitor, control access guard and gate guard. We need not address this argument, however, because even without Byrd's opinion, there was sufficient evidence to support CNA's decision. Vocational testimony is not required for a plan administrator to determine disability.[10] The fact that Menchaca was actually performing part-time work for a law firm is strong evidence that Menchaca was not disabled from performing "any occupation." Moreover, video surveillance and medical testimony established that Menchaca was capable of performing sedentary or light-capacity work. Additionally, Menchaca's refusal to provide earnings information and medical updates as required by the plan provided a sufficient reason to deny benefits. Given these facts, we cannot say that CNA abused its discretion in denying Menchaca's long-term benefits.[11]

10 *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994).

11 *See Duhon*, 15 F.3d at 1308 (holding that a plan administrator did not abuse its discretion in denying disability benefits to a sixty-five-year-old man where medical evidence showed he was capable of performing "sedentary to light work," despite being unable to squat, stoop, bend, or lift more than twenty-five pounds).

Finally, Menchaca argues that the Plan's "any occupation" language must be read to include an implicit requirement that Menchaca be able to work at the occupation on a full-time basis, and that none of the evidence establishes that he was able to work full time. This argument is not supported by the Plan's definition of Total
304 Disability which requires that Menchaca *304 "not engage in any occupation or perform any work for compensation or profit other than Rehabilitative Employment." This definition does not require that work performed for compensation (such as the part-time work he was doing) be full time. Therefore, CNA did not abuse its discretion by failing to read a full-time requirement into the policy.

# IV

Menchaca also appeals the district court's dismissal of his state-law causes of action for breach of contract, statutory and common law breach of the duty of good faith and fair dealing, breach of fiduciary duty, negligence, and violations of Texas Insurance Code §§ 21.21 and 21.55.[12] CNA filed two separate motions to dismiss the state-law causes of actions on the grounds that they were preempted by ERISA, and the district court granted both motions. Menchaca's Second Amended Complaint again alleged facts that, according to the district court, "may represent an attempt to assert claims based on state law." Thus, in the district court's grant of summary judgment, it again stated that any state-law claims were preempted by ERISA. Menchaca argues that he had the right to plead the state-law causes of action in the alternative to his ERISA claims and that preemption of those claims violated his constitutional rights. We review ERISA preemption of state law de novo.[13]

12 *See* 2003 Tex. Sess. Law Serv. 1274 (West) (renumbering and reorganizing the Texas Insurance Code, including §§ 21.21 and 21.55).

13 *Provident Life Accident Ins. Co. v. Sharpless*, 364 F.3d 634, 640 (5th Cir. 2004).

ERISA preempts all state laws that "relate" to employee benefit plans.[14] Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."[15] Though ERISA also has a savings clause excepting from preemption any state laws "which regulate insurance, banking, or securities," we have previously held that claims under Texas Insurance Code § 21.21 and 21.25, as well as the Texas common law duties of good faith and fair dealing, do not fall within that exception and are preempted by ERISA.[16]

14 29 U.S.C. § 1144(a); *Provident Life Accident Ins. Co.*, 364 F.3d at 640.

15 *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

16 *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 276-78 (5th Cir. 2004).

Indeed, Menchaca acknowledges that ERISA preempts "a party's ability to obtain multiple relief via concurrent state-law causes of action." Instead, Menchaca argues that his state-law claims are pled in the alternative pursuant to Federal Rule of Civil Procedure 8 and thus not subject to preemption. This argument has no merit. Whether Menchaca refers to his claims as an "alternate theory of recovery" or a "concurrent state-law cause of

action" has no effect on ERISA's preemption of those claims. Thus, the district court properly dismissed Menchaca's state-law claims.

* * * * * *

The district court's grant of summary judgment is AFFIRMED.

305 *305

casetext